UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SENSITECH INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: 20-11043 |
| v. | ) | |
| | ) | |
| LIMESTONE FZE, and SAMER ALWASH | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**[1]

Because this Court has personal jurisdiction over Defendant Samer Alwash ("Mr. Alwash") based both on (i) a traditional Long Arm Statute/Due Process analysis, and (ii) a forum selection clause to which he is bound, his Motion to Dismiss Complaint for Lack of Personal Jurisdiction ("Motion to Dismiss") should be denied.

**FACTUAL BACKGROUND**

Sensitech, Inc. ("Sensitech") is a world leader in manufacturing and selling products and services to monitor the quality, integrity and security of its customers' valuable products during their transport across a state or around the world. For more than 25 years, leading companies in the food, pharmaceutical, industrial, consumer goods, and other industries have relied on Sensitech to help monitor and protect their products.

Mr. Alwash is the Managing Director, owner and sole decision-maker of/for Defendant

---

[1]     By submitting this substantive Opposition, Sensitech is not waiving its position that the Motion to Dismiss should be struck because it plainly was ghost written by an attorney who did not sign the pleading. *See* Motion to Strike and Bar "Ghost-Written" Filings (ECF Dkt. No. 31).

1

Limestone FZE ("Limestone"), a company that provides customers in the Middle East with various devices to monitor their products while they are being shipped. In or about 2008, Alwash/Limestone began working as a distributor of Sensitech's products in the Middle East, and in April of 2015, the parties executed a written Distributor Agreement ("Distributor Agreement" **Exhibit A** hereto), which Mr. Alwash negotiated and executed.

Pursuant to the Distributor Agreement, Alwash/Limestone would buy products from Sensitech on credit, re-sell them to end-users and then pay back Sensitech. By the time the Distributor Agreement ultimately came to a conclusion on December 31, 2018, Alwash/Limestone owed Sensitech $114,655.41 for products purchased on credit. When Sensitech decided not to renew the Distributor Agreement for 2019, Mr. Alwash plainly became disgruntled, and he/Limestone refused to pay the $114,655.41 owed to Sensitech.[2] Even more outrageous than that, however, Mr. Alwash later revealed that he had secretly recorded a dinner conversation with a representative of Sensitech that involved Sensitech's confidential business information (the "Recording") and posted that Recording on Limestone's LinkedIn page.

When Mr. Alwash refused to take down the public posting of the Recording, Sensitech filed this suit and sought a Temporary Restraining Order and Preliminary Injunction, mandating that he do so. Then, after Mr. Alwash was served with process in the litigation, the following occurred:

- Mr. Alwash published at least three posts on his personal LinkedIn page, stating, *inter alia*, that Sensitech and its parent, Carrier "is a criminal organization."

- Wendy Alwash, Mr. Alwash's wife ("Mrs. Alwash"), published on her LinkedIn page the false statement that she "just got threatened at my home" by representatives of Sensitech

---

[2] While Sensitech originally brought suit in 2018 to collect such funds (and for other reasons), it was unable to obtain service on Mr. Alwash and/or Limestone, and Sensitech eventually dismissed that action.

and Carrier and went on to state: "what's next: murder?"

- Mrs. Alwash also published on her LinkedIn page the email of Sensitech's in-house counsel, Lisa Bongiovi, and told people to email Attorney Bongiovi.[3]

Sensitech responded by amending its Complaint and proposed injunctive order, which this Court later adopted in all substantive respects. Now, Mr. Alwash seeks to be dismissed from this action, arguing that this Court has no personal jurisdiction over him. As discussed fully below, however, Mr. Alwash's position simply has no merit.

## ARGUMENT

I.    **This Court Has Personal Jurisdiction Over Mr. Alwash Based On The Massachusetts Long Arm Statute And The Due Process Clause Of The Fourteenth Amendment**

> In a diversity suit, this Court acts as the functional equivalent of a state court sitting in the forum state. As such, to make a prima facie showing of personal jurisdiction in diversity cases, the plaintiff must demonstrate that the exercise of jurisdiction 1) coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution by showing that each defendant has "minimum contacts" with Massachusetts and 2) is permitted by the Massachusetts long-arm statute, M.G.L. c. 223A, § 3.

*Peterson v. Burke*, 433 F. Supp. 3d 212, 2020 WL 210822 *4 (D. Mass. 2020) (appeal pending) (internal citations and quotations omitted).

A.    **The Massachusetts Long Arm Statute Confers Personal Jurisdiction Over Mr. Alwash On This Court**

*Peterson*, decided by this Court, leaves no doubt that Mr. Alwash is subject to personal jurisdiction in the District of Massachusetts under the Long Arm Statute.[4] In *Peterson*, as in this case, claims of defamation and tortious interference were asserted against various individual defendants, arising out of the publication of certain statements by the defendants. In *Peterson*, as

---

[3]    There can be no serious doubt that Mr. Alwash was behind the defamatory publications on Mrs. Alwash's LinkedIn page, and he never has denied this.

[4]    Mr. Alwash has not disputed that he falls under the ambit of the Massachusetts Long Arm statute.

in this case, plaintiff claimed that jurisdiction was proper under section 3(d) of the Long Arm Statute, "which applies to conduct taken outside of Massachusetts that allegedly caused tortious injury within the Commonwealth." *Id*.[5]  ***Unlike this case***, however, in *Peterson*, the plaintiff claimed that the individual defendants fell under the ambit of Section 3(d) ***solely*** because they were officers, directors and/or agents of a corporate entity that satisfied the requirements of Section 3(d). In response, this Court ruled that it did not have personal jurisdiction over the individual defendants because: "For purposes of exercising personal jurisdiction over a corporate officer, the inquiry is whether the individual was a 'primary participant' in the alleged wrongdoing." *Id*. (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Here, Mr. Alwash not only was the ***primary*** participant in the wrongdoing that has been alleged, he necessarily was the ***sole*** participant, as he is the Managing Director, owner and sole decision-maker of Limestone (and appears to be its only employee or agent). Thus, ***Mr. Alwash caused Limestone*** to refuse to pay Sensitech the money Limestone owes Sensitech; ***Mr. Alwash caused Limestone*** to illegally retain Sensitech's confidential information; and ***Mr. Alwash caused Limestone*** to post on its LinkedIn page the Recording containing Sensitech's confidential information. In addition, Mr. Alwash also posted on his own LinkedIn page other defamatory statements about Sensitech. Thus, because he was the "primary participant" in the alleged wrongdoing by Limestone (and his own, personal wrongdoing), there can be no dispute that Limestone and Mr. Alwash are subject to the jurisdiction of this Court under Section 3(d) of the Massachusetts Long Arm statute.[6] Finally, even if this Court had some doubt in this regard, it

---

[5]     Section 3(d) states that a court may exercise personal jurisdiction over someone "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth …." M.G.L. c. 223, § 3(d).

[6]     Sensitech also notes that the facts as alleged indicate that Mr. Alwash is the alter ego of Limestone and, therefore, the company's conduct should be imputed directly to him. S*ee Rock & Roll Library, Inc. v. Quantum Am., Inc.*, 82 Mass. App. Ct. 1118, 2012 WL 5231971, *1 (2012) ("The facts alleged in the complaint and in the

still should refrain from dismissing Mr. Alwash at this early stage. *See, e.g., Cepeda v. Kass*, 62

Mass. App. Ct. 732, 739–40 (2004) (noting that under Federal Rule 12(b)(2), if a prima facie

showing of personal jurisdiction is made, that should thwart a motion to dismiss even if

contradictory evidence is provided by the plaintiff).

> **B.      Exercising Personal Jurisdiction Over Mr. Alwash Is Consonant With Due Process**

> The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation. The plaintiff's lack of "contacts" will not defeat otherwise proper jurisdiction, but they may be so manifold as to permit jurisdiction when it would not exist in their absence.

*Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal citations and quotations omitted).

In *Calder*, television actress Shirley Jones sued the National Enquirer and the authors of

an article it published that she claimed was defamatory.  Because the lawsuit was filed in

California, and the authors lived in Florida, they moved to dismiss, arguing that the California

Superior Court had no personal jurisdiction over them. While that Court allowed defendants'

motion, the California Court of Appeals reversed. Ultimately, the Supreme Court of the United

States affirmed the Court of Appeals, stating the following:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

---

plaintiff's submission in opposition to the motion to dismiss support an inference either that the two defendant corporations are alter egos or that they acted as agents for one another, and therefore their contacts with the Commonwealth can be imputed to one another.").

*Id*., at 788–89.

The exact same logic holds true in this case: (i) Mr. Alwash's libelous and tortious conduct concerned the activities of a Massachusetts resident; (ii) Mr. Alwash impugned the integrity of a company that is centered in Massachusetts; (iii) Mr. Alwash gathered the ultimate sources of information from the victim – again, which is in Massachusetts; and (iv) the harm was suffered in Massachusetts. In sum (and as in *Calder*), Massachusetts was the focal point of Mr. Alwash's conduct at issue in this case. As such, exercising jurisdiction over him in the Commonwealth is proper. *Id*.

While Mr. Alwash relies almost exclusively on *Walden v. Fiore*, 571 U.S. 277 (2014), as a basis for arguing that exercising jurisdiction over him does not comport with Due Process, the factual backdrop of *Walden* is so critically different than the present matter that it does not provide any support for Mr. Alwash's position. In *Walden*, the petitioner was a Georgia police officer, who detained the respondents at the Atlanta airport, confiscated $90,000 in cash they had brought from Puerto Rico and later executed an affidavit to justify such seizure. The respondents then traveled on to Nevada and, even though they eventually obtained the return of their money, they sued Walden in Nevada for his unlawful seizure and filing what they claimed was a false affidavit.

While the Supreme Court eventually ruled that Nevada did not have personal jurisdiction over Walden, that legal ruling was grounded in aspects of Walden's conduct that are completely different than Mr. Alwash's conduct herein. As an initial matter, the *Walden* Court noted that for jurisdiction to comply with Due Process, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id*. at 284 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Put another way, "[d]ue process

requires that a defendant be haled into court in a forum State based on his own affiliation with

the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting

with other persons affiliated with the State." *Id*. at 286 (internal quotations and citations

omitted). Further, unlike in the present case, in *Walden*:

> Petitioner approached, questioned, and searched respondents, and seized the cash at issue, ***in the Atlanta airport***. It is alleged that petitioner later helped draft a "false probable cause affidavit" ***in Georgia*** and forwarded that affidavit to a United States Attorney's Office ***in Georgia*** to support a potential action for forfeiture of the seized funds. ***Petitioner never*** traveled to, conducted activities within, contacted anyone in, or ***sent anything or anyone to Nevada***. In short, when viewed through the proper lens—whether the defendant's actions connect him to the forum—***petitioner formed no jurisdictionally relevant contacts with Nevada***.

*Id*. at 288–89 (emphasis added).

As noted above, on the other hand, Mr. Alwash formed direct and relevant contacts with

Massachusetts, as opposed to contacts merely with someone affiliated with Massachusetts.

Accordingly, *Walden* does not in any way undermine the conclusion that exercising personal

jurisdiction over Mr. Alwash in Massachusetts comports with Due Process.

## II.     This Court Has Personal Jurisdiction Over Mr. Alwash Pursuant To The Forum Selection Clause In The Distributor Agreement

Even if Mr. Alwash were not subject to the jurisdiction of this Court based on the

Massachusetts Long Arm Statute and Due Process, personal jurisdiction is a waivable right, and

there are a variety of ways a defendant can expressly or impliedly consent to personal

jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). One such way is

through a forum selection clause. *Inso Corp. v. Dekotec Handelsges, mbH*, 999 F. Supp. 165,

166 (D. Mass. 1998) ("A party to a contract may waive its right to challenge personal jurisdiction

by consenting to personal jurisdiction in a forum selection clause.") (citing *M/S Bremen v.

Zapata Off–Shore Co.,* 407 U.S. 1, 11 (1972)). *See also, Provanzano v. Parker View Farm, Inc.*,

827 F. Supp. 2d 53, 58 (D. Mass. 2011) ("By signing a forum selection clause, however, a party to a contract waives its right to challenge personal jurisdiction"); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991) ("Because we find the forum-selection clause to be dispositive of this question, we need not consider petitioner's constitutional argument as to personal jurisdiction.").

As the forum selection clause on page 14 of the Distributorship Agreement plainly states: "Any action brought in connection with this Agreement shall be brought only in the state or federal courts located in the Commonwealth of Massachusetts." Moreover, it "is well established that forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 18 (1st Cir. 2009) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).[7]

While the Motion to Dismiss does not directly dispute that Mr. Alwash is personally bound by the forum selection clause in the Distributor Agreement,[8] any such contention would have no merit because Mr. Alwash *is* Limestone for all intents and purposes. Indeed, "'the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.'" *Europa Eye Wear Corp. v. Kaizen Advisors, LLC*, 390 F. Supp. 3d 228, 231 (D. Mass. 2019) (quoting *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d

---

[7]    This rule is particularly true of mandatory forum selection clauses like the one at issue here: "A mandatory forum selection clause carries a 'strong presumption of enforceability' that can be overcome only by a clear showing that enforcement would be unreasonable or contrary to the public policy of the forum." *Provanzano*, 827 F. Supp. 2d at, 60. The forum-selection clause in the Distributor Agreement plainly is mandatory, as it states that all actions "in connection with [the Distributor] Agreement *shall* be brought only in the state or federal courts located in the Commonwealth of Massachusetts." (Emphasis added). *See id.* ("The use of words such as 'will' or 'shall' demonstrate parties' exclusive commitment to the named forum.").

[8]    Mr. Alwash knew before he filed his Motion to Dismiss that Sensitech contends that he is bound by the forum selection clause in the Distributor Agreement because Sensitech made this exact argument in connection with its Motion for Preliminary Injunction. *See* Plaintiff's Emergency Motion to Supplement the Record in Support of its Request for Injunctive Relief. ECF Dkt. No. 16.

696, 701 (2d Cir. 2009)). Rather, a non-party to a forum selection clause may be bound if he is "closely related to the dispute such that it becomes foreseeable that [he] will be bound." *Id.* (quoting *Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc.*, 677 F. Supp. 2d 373, 379 (D. Mass. 2009)).

Mr. Alwash plainly qualifies as a "closely related" party in this case. As an initial matter, because Mr. Alwash is the Managing Director, owner and sole decision-maker of/for Limestone, he was a third-party beneficiary of the Distributor Agreement, which renders him a closely related party as a matter of law. *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 210 n.7 (7th Cir. 1993) ("third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements …").

Wholly apart from this, Mr. Alwash also is a closely related party because some of Sensitech's claims hinge on breaches of the Distributor Agreement by Mr. Alwash on behalf of Limestone.[9] *See generally*, *Europa Eye Wear Corp.*, 390 F. Supp. 3d 228. In *Europa*, AO Eyewear, Inc. ("AO") and Kaizen Advisors, LLC ("KZA") had signed two agreements related to a contemplated transaction whereby KZA would purchase AO, and both of those contracts had mandatory forum selection clauses, stating that any litigation must be brought in California. After that transaction fell through, Europa sought to acquire AO, and KZA threatened to enjoin that transaction, claiming that it (KZA) still was entitled to purchase AO. Shortly thereafter, Europa filed suit in the District of Massachusetts, seeking a declaratory judgment that KZA had no basis on which to block a Europa-AO transaction.

---

[9]     As just one example, the Distributor Agreement precludes Limestone from using or disclosing any Sensitech confidential information, and Sensitech contends that Mr. Alwash tortiously interfered with Sensitech's business and contractual relations by, *inter alia*, causing Limestone to post on LinkedIn the Recording – which contains Sensitech's confidential information.

KZA moved to dismiss Europa's lawsuit and/or have the case transferred to California based on the forum selection clauses in its agreements with AO. Europa countered by arguing that because it was not a party to those contracts, the forum selection clauses did not apply to it, and there was no basis to dismiss or transfer its lawsuit. The federal district court agreed with KZA, however, holding that:

> Whether KZA is entitled to delay or prevent the sale of AO, however, necessarily requires an interpretation of the contracts between KZA and AO. … Therefore, … the disputes between KZA and AO and between KZA and Europa are based on the same set of operative facts such that this case warrants transfer.

*Id.* at 232.

As in *Europa*, the claims against Mr. Alwash in this case for tortious interference, conversion, theft of trade secrets, misappropriation, and violations of Chapter 93A all are extremely closely related to, and even hinge to a certain extent on, the rights and obligations under the Distributor Agreement – *that Mr. Alwash negotiated and signed and which funneled to Mr. Alwash the confidential information he later improperly disclosed.* Accordingly, he is so closely related to that Agreement that it is appropriate for him to be bound by the forum selection clause contained therein, which "amounts to consent to personal jurisdiction" in the selected forum – Massachusetts. *Inso Corp.*, 999 F. Supp. at 167. Indeed, "[t]o hold otherwise would be to ignore the fundamental principle of judicial economy." *Europa*, 390 F. Supp. 3d at 232 (internal quotations and citations omitted).[10]

## CONCLUSION

For all of the foregoing reasons, this Court has personal jurisdiction over Mr. Alwash and, therefore, his Motion to Dismiss should be denied.

---

[10]    Indeed, Mr. Alwash necessarily will be part of this case even if his Motion to Dismiss were allowed, as Limestone has Answered and not challenged personal jurisdiction.

10

**SENSITECH INC.**

By its attorneys,

*/s/ Shepard Davidson*
Shepard Davidson (BBO #557082)
sdavidson@burnslev.com
Gregory S. Paonessa (BBO #691216)
gpaonessa@burnslev.com
Burns & Levinson LLP
125 High Street
Boston, MA 02110
617-345-3336

Dated: June 22, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the foregoing Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record. I hereby certify that I have also served a copy of the foregoing on Defendants, Samer Alwash and Limestone FZE, via email, to Mr. Alwash, who is *pro se* and does not have an ECF login and Limestone is not yet represented by counsel so neither will receive ECF email notification of this filing.

*/s/ Gregory S. Paonessa*
Gregory S. Paonessa (BBO #691216)

Dated: June 22, 2020

4810-8432-6592.2

11