UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SENSITECH INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 20-11043 |
| | ) |
| | ) **LEAVE TO FILE GRANTED** |
| LIMESTONE FZE, and SAMER ALWASH | ) **ON JULY 24, 2020** |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISSOLVE OR MODIFY PRELIMINARY INJUNCTION**

Incredibly, even though Defendants Samer Alwash ("Mr. Alwash") and Limestone FZE ("Limestone" and, together, "Defendants") never have denied that they published false and defamatory statements about Plaintiff Sensitech, Inc. ("Sensitech") in order to tortiously interfere with its business, they now seek to dissolve this Court's Preliminary Injunction (the "Order") – which appears to be the only reason Defendants have ceased their malevolent conduct. Further, while Sensitech has made it clear to Defendants that it was amenable to narrowing the scope of the Order, Defendants refused to engage in a bona fide Rule 7.1 Conference. Accordingly, and for all of the more specific reasons discussed below, the above referenced Motion ("Motion to Dissolve") should be denied.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

**General Background on the Parties and this Dispute**

The following facts (set out in Sensitech's initial Memorandum in Support of Its Motion for Preliminary Injunction (Dkt. No. 9) and its Supplemental Motion for Preliminary Injunction

1

(Dkt. No. 11)) never have been disputed, questioned or challenged in any way by Defendants:

1.      Sensitech is a world leader in manufacturing and selling products and services to monitor the quality, integrity and security of its customers' valuable products during their transport across a state or around the world. For more than 25 years, leading companies in the food, pharmaceutical, industrial, consumer goods, and other industries have relied on Sensitech to help protect their products.

2.      Limestone is a Dubai based company that has been assisting customers in the Middle East region by providing them with various devices to monitor their products while they are being shipped. In or about 2008, Limestone began working as a distributor of Sensitech's products in the Middle East, and in April of 2015, Limestone and Sensitech entered into a written Distributor Agreement ("Distributor Agreement"). While the Agreement technically was between Sensitech and Limestone, all of Sensitech's dealings with Limestone were through Mr. Alwash, who represented that he was the Managing Director, owner and sole decision-maker with respect to Limestone.

3.      Pursuant to the Distributor Agreement, Limestone became Sensitech's exclusive distributor of "Cold Chain" monitors and related products and services in the United Arab Emirates and Saudi Arabia.  As part of the business relationship, Limestone/Alwash would buy products from Sensitech on credit, re-sell them to end-users and then pay back Sensitech.

4.      While the Distributor Agreement originally was set to expire on March 31, 2016, through two amendments, the expiration date was extended through December 31, 2018. Further, by the time the Distributor Agreement expired, Limestone owed Sensitech $114,655.41 for products that Limestone had purchased on credit.

5.       Sensitech decided not to renew the Distributor Agreement for 2019, which plainly disgruntled Mr. Alwash, and he refused to have Limestone reimburse Sensitech for the $114,655.41 that it was owed. Even more outrageous than that, however, Mr. Alwash later revealed that he had secretly recorded a dinner conversation with a representative of Sensitech that involved Sensitech's confidential business information (the "Recording") and posted that Recording on Limestone's LinkedIn page.

6.       The Recording was made unlawfully as the Sensitech participant had no idea he was being recorded and did not consent to it. Further, Mr. Alwash publicized this Recording in an effort to interfere with Sensitech's contracts and contemplated contractual relationships. While Sensitech demanded that Mr. Alwash and Limestone take down the Recording from LinkedIn, they refused to do so.

7.       After Sensitech filed this lawsuit and emailed copies of the Complaint to Mr. Alwash, the following occurred:

- Mr. Alwash published at least three posts to his LinkedIn page, stating, *inter alia*, that Sensitech and its parent, Carrier "is a criminal organization."

- Wendy Alwash, Mr. Alwash's wife ("Mrs. Alwash"), published on her LinkedIn page the false statement that she "just got threatened at my home" by representatives of Sensitech and Carrier and went on to state: "what's next: murder?"

- Mrs. Alwash also published on her LinkedIn page the email of Sensitech's in-house counsel, Lisa Bongiovi, and told people to email Attorney Bongiovi.

8.      There can be no genuine doubt that Mr. Alwash is behind all of the foregoing, and that it was part of his vendetta to harass, defame and tortiously interfere with Sensitech's business.

## The Hearing on the Motion for Injunctive Relief and the Court's Order

On June 4, 2020, this Court held a hearing on Sensitech's motions for injunctive relief. At that hearing, Mr. Alwash appeared *pro se*, and no one appeared on behalf of Limestone. Further, while Mr. Alwash was given multiple opportunities to present arguments in opposition to those motions, he refused to do so, saying repeatedly that his only reason for appearing was to contest personal jurisdiction. On June 5, 2020, this Court entered the Order.

## The Lack of any Bona Fide Rule 7.1 Conference

Sometime after the Order entered, Defendants engaged new counsel who filed an appearance on their behalf.[1] On July 6, 2020, Sensitech's counsel received an email from Defendants' counsel, saying that he had prepared "a motion" and wanted to have a Rule 7.1 conference to discuss it. *See* **Exhibit A** hereto.  Nevertheless, as the following email (attached as part of **Exhibit A**) confirms, Defendant's counsel would not engage in a bona fide Rule 7.1 conference:

> Lee,
>
> As I just said on our phone call, I am prepared to have a Rule 7.1 conference in good faith with respect to a Motion to Modify or Vacate the Preliminary Injunction in the Sensitech v. Limestone matter. You made a number of vague requests and arguments on our call, and I need to see what you really want and what legal support you have for them. If you file without giving me that opportunity, I will take the position that your motion should be denied based on the failure to have a true 7.1 conference.
>
> Shep

---

[1]      Defendants have had several counsel represent them in connection with their disputes with Sensitech, but their current counsel is the first who has formally appeared.

4

Notwithstanding the foregoing, Defendants' counsel did not respond to the foregoing email until after he filed the Motion to Dissolve. *Id*. While Sensitech's counsel thereafter offered to resolve the dispute by agreeing to substantially narrowing the scope of the Order (*id*.), Defendants' counsel would not agree.

## ARGUMENT

**I.    The Motion To Dissolve Should Be Denied Because Defendants Have Flouted Their Obligations Under Local Rule 7.1**

Local Rule 7.1(a)(2) plainly states that "no motion shall be filed unless counsel certify that they have conferred and have attempted in ***good faith*** to resolve or narrow the issue." (Emphasis added.) Further, "Rule 7.1 is no trifle, and . . . the court expects compliance with both the letter and spirit of its requirements." *Converse Inc. v. Reebok Int'l, Ltd.*, 328 F. Supp. 2d 166, 171 (D. Mass. 2004). In this case, however, Defendants' counsel made no effort to genuinely discuss narrowing the issues in dispute before filing the Motion to Dissolve. Rather, he simply sought formalistic compliance so he could affix the required Rule 7.1 certification on the Motion to Dissolve. While Defendants' counsel did offer to have a Rule 7.1 conference ***after*** filing the Motion, that should not absolve the transgression because "[t]he purpose of Rule 7.1 is to conserve judicial resources by encouraging parties to narrow the contours of disagreement ***before*** bringing their dispute to the court." *Id*. at 170 (emphasis added). Accordingly, for this reason, alone, Sensitech respectfully suggests that the Motion to Dissolve should be denied. *See, e.g., Martinez v. Hubbard*, 172 F. Supp. 3d 378, 383 (D. Mass. 2016) (a party's failure in a Rule 7.1 conference to note that it would seek sanctions in connection with a motion to strike "would be reason enough to deny [the] motion."). *See also, Converse*, 328 F. Supp. 2d at 170 ("Rule 7.1 does not have a 'no harm, no foul' escape clause.").

5

**II.     The Preliminary Injunction Should Not Be Dissolved[2]**

As the Court noted in its Order, Sensitech established an entitlement to injunctive relief because it:

> [H]as shown a likelihood of succeeding on the merits of its claim, that it will suffer irreparable harm in the absence of injunctive relief, that the balancing of the harms weighs in its favor, and that a preliminary injunction will not have a detrimental effect on the public interest. *See Jean v. Mass. State Police*, 492 F.3d 24, 26-27 (1st Cir. 2007).

Significantly, Defendants do not challenge any of this. Rather, they contend that the Order should be vacated because (i) it consists of unconstitutional restraints on speech, (ii) Defendants were unrepresented at the time the Order was issued, and (iii) the Court did not make findings of fact or conclusions of law to support its ruling. None of these arguments has any merit.

**A.     Paragraphs 7 And 8 Of The Order Are Not Unconstitutional Restraints On Speech[3]**

For several reasons, paragraphs 7 and 8 of the Order should not be vacated because they supposedly constitute unconstitutional restraints on speech. While Defendants cite a state court case suggesting that it would be unconstitutional to issue a prior restraint on defamatory speech, the First Circuit expressly rejected such a blanket ruling in *Sindi v. El-Moslimany*, 896 F.3d 1, 30 (1st Cir. 2018). To the contrary, the *Sindi* Court held that a party is entitled to an injunction in the form of a prior restraint on speech if it can "establish that the 'evil that would result from' the offending publication is 'both great and certain and cannot be mitigated by less intrusive measures.'" *Id*. at 32 (quoting *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (additional citations omitted)). Further, not only does Sensitech respectfully suggest that it made such a

---

[2]     While the Motion to Dissolve formalistically asks for modification, as an alternative remedy, Defendants do not suggest any way that the Order could be modified that would be acceptable to them.

[3]     While Defendants do not specifically reference Paragraphs 7 and 8 of the Order, those are the only portions of the Order that arguably limit speech.

showing through its unchallenged motion papers, but Defendants nowhere suggest in the Memorandum in Support of their Motion to Dissolve ("Memorandum") that (i) the evil resulting from the restrained publications would not be great and certain, or (ii) the harm at issue could be mitigated by any means other than the restrictions placed on them by paragraphs 7 and 8 of the Order. Rather, they simply contend that the Order should be vacated because it is a "classic prior restraint" (Memorandum at p.2) – an argument expressly rejected by the Supreme Court. *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 441 (1957) ("The phrase 'prior restraint' is not a self-wielding sword.").

Finally, and notwithstanding the fact that Defendants have failed to carry their burden of showing that paragraphs 7 or 8 of the Order should be vacated as prior restraints on speech, Sensitech would have no objection if this Court were to narrow the scope of those paragraphs so that they only applied to publications that were false, defamatory, designed to inflict harm on Sensitech (or Carrier and/or any of their employees, representatives, affiliates or agents), and/or that revealed any of Sensitech's or Carrier's confidential information.[4]

**B.    The Order Should Not Be Vacated Or Modified Because The Defendants Were Unrepresented At The Time It Was Issued**

Defendants' contention that the Order should be vacated or modified because they were unrepresented at the time it issued is specious as a matter of fact, law and logic. As an initial matter, and as this Court has been apprised previously, even though Attorney Geoffrey Morson never filed an appearance in this action, he did represent the Defendants – and even ghost wrote at least one of their filings. *See, e.g.*, Dkt. No. 32 at Exhibit 1.  As such, the assertion on page 2 of the Memorandum that if Defendants had "the aid of counsel, [they] would have raised

---

[4]    Such narrowing was proposed by Sensitech prior to filing this Opposition as a way to narrow the scope of the issues raised by the Motion to Dissolve, but Defendants' counsel refused to agree to it. *See* **Exhibit A**.

material objections to the sweeping injunction," is disingenuous, at best. Second, even if Defendants truly were unrepresented at the time the injunction was issued, they cite no law suggesting that unrepresented parties are immune from injunctive relief.[5] Finally, any rule that an injunction against a *pro se* litigant is unenforceable – which is Defendants' essential position – simply flies in the face of commons sense, would be contrary to sound logic and is against public policy.

**C.      The Order Should Not Be Vacated Because It Lacks Findings Of Fact Or Conclusions Of Law**

The Order has adequate findings of fact and conclusions of law. As this Court is aware, there was no substantive opposition to any aspect of Sensitech's legal or factual assertions in support of its request for injunctive relief. Thus, it appears plain that the Court accepted those legal and factual assertions as the basis for its Order. Be all that as it may, and while Sensitech believes it to be unnecessary, it has no objection to the Court stating in more detail any findings of fact and conclusions of law in support of the Order.

---

[5]      While Defendants may be correct that *Cok v. Family Court of Rhode Island*, 985 F.2d 32, 36 (1st Cir. 1993) vacated an injunction ***against*** a *pro se* litigant, the First Circuit did not do so ***because*** the litigant was *pro se*.

## CONCLUSION

For all of the foregoing reasons, Sensitech respectfully requests that this Court deny the

Motion to Dissolve.

**SENSITECH INC.**

By its attorneys,

*/s/ Shepard Davidson*
Shepard Davidson (BBO #557082)
sdavidson@burnslev.com
Gregory S. Paonessa (BBO #691216)
gpaonessa@burnslev.com
Burns & Levinson LLP
125 High Street
Boston, MA 02110
617-345-3336

Dated:  July 24, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the foregoing Opposition to Defendants' Motion to Dissolve or Modify Preliminary Injunction using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

*/s/ Gregory S. Paonessa*
Gregory S. Paonessa (BBO #691216)

Dated: July 24, 2020

4845-1672-5186.1