UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CASE #: 1:20-cr-11043-NMG


SENSITECH, INC.,

          Plaintiff

vs.

LIMESTONE FZE, et al.,

          Defendant


BEFORE THE HONORABLE NATHANIEL M. GORTON

UNITED STATES DISTRICT JUDGE

MOTION HEARING VIA ZOOM



John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210



June 4, 2020
2:15 p.m.




Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

APPEARANCES:


Shepard Davidson

Gregory S. Paonessa

Burns & Levinson, LLP

125 High Street

Boston, MA 02210

617-345-3000

sdavidson@bumslev.com

gpaonessa@burnslev.com

For Plaintiff.



Samer Alwash

Slangenbrug 111

1082 JV Amersterdam

Pro Se.

P R O C E E D I N G S

THE CLERK:  This is Civil Action No. 20110434, Sensitech, Inc. versus LimeStone FZE, et al.  Will counsel please identify themselves for the record.

MR. DAVIDSON:  Good afternoon, your Honor.  My name is Shepard Davidson on behalf of the Plaintiff Sensitech.  With me is my colleague Gregory Paonessa and also Mike Hurton, to the extent you need to hear from him.

THE COURT:  Let me get those names down. Mr. Paonessa, how do you spell that?

MR. DAVIDSON:  P-A-O-N-E-S-S-A.

THE COURT:  Mr. Paonessa?

MR. DAVIDSON:  Paonessa.

THE COURT:  Good afternoon.

MR. PAONESSA:  Good afternoon, your Honor.

THE COURT:  And who else?

MR. DAVIDSON:  Mike Hurton, H-U-R-T-O-N.

THE COURT:  You're inside counsel or representing the party himself?

MR. DAVIDSON:  Yes.  He submitted an affidavit so I wanted him to be here.

THE COURT:  Fair enough.  Do we have Mr. Alwash?

MR. ALWASH:  Good afternoon, your Honor.  Yes.  I represent myself, Samer Alwash.

THE COURT:  You pronounce it Alwash?

MR. ALWASH:  Yes, Alwash, A-L-W-A-S-H.

THE COURT:  Okay.  We're here on the plaintiff's motion for both a temporary restraining order and a preliminary injunction.  I understand, Mr. Alwash, that you are contesting jurisdiction, but I don't know how you are because I'm reading the agreement that your company entered into, apparently, a few years ago which seems to concede jurisdiction in paragraph 13.10.

Before I start, of course, I should remind everybody who is representing themselves, you have a constitutional right to represent yourself.  Unfortunately, you cannot represent your corporate co-defendant because only an attorney can represent a corporation.  So even though you are being heard here today representing your individual interests, you are not permitted to represent the interests of LimeStone FZE, which I'm taking is a corporate entity incorporated in Dubai.  Am I correct?

MR. ALWASH:  Your Honor, I'm here representing myself in persona.

THE COURT:  The corporate defendant is a Dubai corporation, is that right?

MR. ALWASH:  Your Honor, I'm here today to contest jurisdiction for this court over myself.

THE COURT:  Okay.  So you're not going to answer my question as to what the corporate defendant is even though

you're the principal officer of it?

MR. ALWASH:  Your Honor, this Court has no jurisdiction over me.  I appear here solely to contest the same for the reasons stated in my declaration.

THE COURT:  All right.  I will hear Mr. Davidson with respect to his motion.

MR. DAVIDSON:  Thank you, your Honor.  Sensitech is a world leader in products and services to monitor the quality, integrity and security of its customers' valuable products that get shipped across the state, across the country, or around the world.

To give you an example, if you were shipping strawberries just canned outside San Francisco and they were going to the Stop & Shop in Worcester, Mass., and they're in a container, there could be a Sensitech device that would be in that container so when the strawberries get here, you'll be able to know that the temperature never varied more than 3 degrees from the 58 degrees it was supposed to be the entire time.  They do that for food and for medications and products such as that.

In 2008, Mr. Alwash became a distributor of Sensitech's products in the Middle East.  In 2015, he, through his company LimeStone, entered into a distributorship agreement with Sensitech.  While that agreement technically was between Sensitech and LimeStone, Mr. Alwash negotiated it.  He's the

managing director.  He's the owner.  He's the sole decision-maker.  He signed the agreement.  He is LimeStone.  Under that agreement, LimeStone would buy product from Sensitech on credit and then sell them to end users and then pay Sensitech back what he owed them, what the company owed them.

By the time that agreement terminated, which was December 31, 2018, LimeStone owed Sensitech about $114,000.  LimeStone didn't pay Sensitech that money.  Eventually, Sensitech brought a lawsuit in the court in the summer of 2018 against LimeStone and Mr. Alwash for that $114,000 and for some other claims.  At that time it was our understanding Mr. Alwash was in Dubai.  We were never able to get service on him in Dubai, so that lawsuit lapsed.  We eventually voluntarily dismissed that lawsuit.

Fast forward then to March -- excuse me -- April of this year and at that time we found that Mr. Alwash had posted a secretly recorded conversation that he had had with Henry Ames of Sensitech, who is the Vice President of Strategy and Business Development and the general manager of the company's Life Sciences business.  In that conversation, Mr. Ames had revealed a variety of confidential information, including Sensitech's go-to-market strategy, including names of specific customers and specific pricing.  Even though the conversation was a couple years ago, that information isn't stale.  Those

contracts are still in place.  That pricing is still in place.  The go-to-market strategy is still in place, so a competitor could use that information against us.

We tried to get LinkedIn to take down the recording.  They wouldn't do it.  So we filed a lawsuit in the Superior Court in Essex County and we sought an emergency restraining order and preliminary injunction.  At this time Mr. Alwash moved to the Netherlands and we did know where he is.  So we served him with the complaint and the motion papers in hand at his house and the return of service was filed in the Superior Court.  At that point Mr. Alwash posted on his own LinkedIn three different posts referring to Sensitech and its parent corporation, Carrier, as a criminal organization.  We amended our complaint to add claims for defamation.  We amended our requests for a temporary restraining order.

Then a strange thing happened, or another strange thing happened at this point.  Mr. Alwash apparently engaged a local attorney here and those posts came down.  The recording came down.  And the defamatory posts came down.  That lawyer reached out to me.  We had a hearing set up for last week on Wednesday.  On Saturday of Memorial Day weekend, I heard from this attorney.  We started negotiating.  We negotiated a stipulated order that would have mooted the hearing on the Wednesday after Memorial Day.  And we had everything worked out.  We worked over that weekend.  On Tuesday morning, I was

just waiting for the final signoff from that attorney.  He just had to chat one more time with Mr. Alwash to make sure everything was all set.

I woke up Tuesday morning expecting to see, okay, we're all set, we'll file the stipulated order with the court. Instead, I saw an e-mail from another attorney in England who said that the first attorney had withdrawn his representation, there was going to be no stipulation to anything and, apparently, the hearing was going forward.  This attorney then submitted materials to the Superior Court, even though he's not admitted in Massachusetts, and the Court decided to put off that hearing for one week.  So the hearing was supposed to be this past Wednesday.

On Tuesday of this week, as I think your Honor realizes, Mr. Alwash then removed the case to this Court and that brings us here to this Court today.  We were fortunate and we very much appreciate the clerk working expeditiously to get this together.

Our supplemental order has nine detailed prayers, but there's really three key things we're seeking here.

THE COURT:  Before you get to that, Mr. Davidson, I'm expecting that Mr. Alwash is going to argue jurisdiction and not the facts.  So why do you say I have jurisdiction or this Court has jurisdiction over him and his corporation?

MR. DAVIDSON:  Sure, your Honor.  I'll skip right

ahead to that.  There's two responses to that.  Okay?  First, we had sort of a mini brief, I'm not sure if your Honor had a chance to read it yet, about the forum selection clause and how that combines people that are not technically party to that grievance.  There's a Rivera case --

THE COURT:  That's your docket number 16, your emergency motion to supplement the record in support of your request for injunctive relief?

MR. DAVIDSON:  Yes.

THE COURT:  I've read it.

MR. DAVIDSON:  Okay.  There's a First Circuit case Rivera.  There's a District Mass. case by Justice Hillman which deal with this issue.  The fact that Mr. Alwash --

THE COURT:  The one case that does seem to deal with it is the Inso Corporation case, which is a District of Massachusetts decision in 1998.  What other case do you cite?

MR. DAVIDSON:  There's the Europa case, your Honor, which is a Judge Hillman decision.  Then there's also the Rivera case, which is a First Circuit decision.

THE COURT:  That all has to do with the forum selection clause, right?

MR. DAVIDSON:  Yes, which is obviously a waiver of personal jurisdiction.

THE COURT:  Well, that's the question.

MR. DAVIDSON:  Well, so, first of all, I believe it

is. That's what happened in Europa. I was one of the counsel in Europa. The argument was there's no personal jurisdiction in California and so the judge shouldn't move the case here but said, no, the forum selection clause.

Specifically in terms of personal jurisdiction, you can look right at the long-arm statute. You can look at due process. I would refer your Honor to the Supreme Court case Calder verse Jones, which is at 465 U.S. 783. In that case, your Honor, Shirley Jones, who you may remember as Shirley Partridge from The Partridge Family, sued the National Enquirer and two authors of an article for defaming her and for intentional infliction of emotional distress. She was in California. The author said, hey, we're in Florida, you can't sue us in California. One of the authors had only been to California twice in his life.

So here's what the Supreme Court said when Shirley Jones said that she had jurisdiction and the authors said they didn't. The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm of both the respondent's emotional distress and the injury to a professional reputation was suffered in California.

In sum, California is the focal point both of this

story and of the harm suffered.  Jurisdiction over petitioners is therefore proper in California based on the effects of their Florida conduct in California.  The Court went on to say petitioners are not charged with near untargeted negligence, rather their intentional and allegedly tortious actions were expressly aimed at California.  Under the circumstances, petitioners must reasonably anticipate being hailed into court there to answer for the truth of the statements made in their article.

The same reasoning applies to Mr. Alwash.  He published these posts intending to harm Sensitech in Massachusetts.  That harm was felt in Massachusetts.  They were published in Massachusetts.  This wasn't just a random act.  This was designed to affect someone in Massachusetts.  So based on the long-arm statute --

THE COURT:  Let me stop you, Mr. Davidson.  You're claiming jurisdiction on the basis of a tort that had been committed in Massachusetts rather than a breach of this contract that has the forum selection clause in it, is that right?

MR. DAVIDSON:  I'm doing both, your Honor.  We have claims for defamation, so that's the tort right there.  Okay? I believe also that based on -- well, also on the torts of publishing confidential information, misappropriation of confidential information and conversion, I think that brings in

the forum selection clause, which says disputes will be resolved in Massachusetts based on the contract and his close association.  Again, he is LimeStone.  So based on all that, your Honor, this Court absolutely has personal jurisdiction.

If there were any issue, respectfully, I think Mr. Alwash should file a brief arguing this and we should have a chance to fully brief this.  I don't think it would be appropriate at this point to decide that we don't have personal jurisdiction over him.  There's certainly enough here.  We should get the injunctive relief.  There's no dispute about the elements of the injunctive relief.  LimeStone absolutely should be enjoined.  None of this information's been challenged.

So based on all of that -- there's also no harm to Mr. Alwash in ordering him not to defame us or not to disclose our confidential information, not to disclose secret recordings.

THE COURT:  Thank you, Mr. Davidson.  I will hear Mr. Alwash in response as a representative of his own personal interest, although I can't hear him in response to representing the corporate defendant.  Mr. Alwash?

MR. ALWASH:  Your Honor, forgive me for having to repeat myself, but this Court has no jurisdiction over me.  I appear at this hearing to contest the same for the reasons in my declaration.

THE COURT:  Say that again.  You're appearing only for

what reason?

MR. ALWASH:  I am appearing here solely to contest the same, no jurisdiction over me.  This Court has no jurisdiction over me.

THE COURT:  And do you have any law to suggest to me why I don't have jurisdiction?  Do you cite any cases?

MR. ALWASH:  Out of the respect to the Court I respond under protest and without waiving my challenge to in personam jurisdiction.  That's the sole reason why I am here today.

THE COURT:  Okay, Mr. Alwash.  I am going to enter an injunction and I'm going to ask you because a part of the rule under which I will impose an injunction, Federal Rule of Civil Procedure 65, calls for a bond to be filed by the Plaintiff to protect the Defendant if I have wrongly enjoined you.

Do you have a suggested amount for the bond that I should require the Plaintiffs to post?

MR. ALWASH:  Your Honor, with all due respect, this Court has no jurisdiction over me.

THE COURT:  You said that before.  It sounds like you're pleading the Fifth Amendment.  This isn't a criminal case, Mr. Alwash.  You're free to say anything you want, but if you just keep repeating those terms, that doesn't do me any good, and I am going to impose an injunction and I'll ask Mr. Davidson why shouldn't I require you to post at least some bond in some amount.

MR. DAVIDSON:  Because there hasn't even been a contention that there would be any harm to the other side, your Honor, I would suggest literally a dollar to fulfill any statutorily procedural obligation there might be because -- there not only hasn't been any argument, but there's nothing to suggest there would be based on what we asked for.

THE COURT:  All right.  I have your draft proposed order but it is not in the format that I generally use.  Is there anything else that you wanted to add to what you put in your proposed order?

MR. DAVIDSON:  No, your Honor.  I was just going to say, if you'd like, I can forward it to the clerk in Word form if that would be helpful.

THE COURT:  Where is it attached?  Tell me the docket number and where it's attached.  I have all the pleadings in front of me but I'm not sure I have the latest version of your request for a temporary restraining order.

MR. DAVIDSON:  I'm going to defer to Mr. Paonessa, who I can see is furiously looking for it now because I'm sure I don't know the docket number.

THE COURT:  Maybe you could tell me to what pleading it is attached.

MR. PAONESSA:  Yes, your Honor.  It is attached to the emergency, supplemental motion for a temporary restraining order and preliminary injunction.

THE COURT:  Which is docket 11?

MR. PAONESSA:  I'm trying to confirm that right now, your Honor.  If you'll excuse me.  I had to do a flurry of filings when this was removed.  Yes.  I believe it's docket 11.

THE COURT:  All right.  And it is entitled a emergency, supplemental motion for a temporary restraining order and preliminary injunction, am I right?

MR. PAONESSA:  Yes.

THE COURT:  What I'm going to do is I'm going to put it into the language that I feel is appropriate for injunctive relief and I'm going to enter it as a preliminary injunction.

I would advise Mr. Alwash to retain counsel, because if you feel there is something of import in this lawsuit, then I would strongly advise you to retain counsel because I am going to enter this order.

I will mull it for a matter of time.  Whether it's over the weekend or not, I will decide later this afternoon.  I will decide as to whether or not any bond to comply with Federal Rule of Civil Procedure 65 is warranted.

Do you want to say anything else in this regard, Mr. Alwash?

MR. ALWASH:  Noted, your Honor.  Thank you.

THE COURT:  Anything else from plaintiff's counsel?

MR. DAVIDSON:  No.  Thank you, your Honor.

THE COURT:  I'm going to enter an order whether it be

today or beginning of next week.  Thank you, counsel, for your arguments.  We're adjourned.

MR. DAVIDSON:  Thank you, your Honor.

MR. ALWASH:  Thank you, your Honor.

(WHEREUPON, the proceedings concluded at 2:37 p.m.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )

DISTRICT OF MASSACHUSETTS      )

        I, Kristin M. Kelley, certify that the foregoing is a correct transcript from the record of proceedings taken June 4, 2020 in the above-entitled matter to the best of my skill and ability.

    /s/ Kristin M. Kelley                    July 2, 2020

    Kristin M. Kelley, RPR, CRR              Date
    Official Court Reporter