## United States District Court
## District of Massachusetts

———————————————————————
                    )
Sensitech Inc.,             )
                    )
       Plaintiff,     )
                    )
         v.         )    Civil Action No.
                    )    20-11043-NMG
LimeStone FZE and Samer Alwash  )
                    )
       Defendants.    )
———————————————————————)

### Memorandum & Order

GORTON, J.

This action arises out of a contract dispute between Sensitech Inc. ("Sensitech" or "plaintiff"), LimeStone FZE ("LimeStone") and its owner, Samer Alwash ("Mr. Alwash" or "individual defendant") (collectively, "defendants"). Pending before the Court are Mr. Alwash's motion to dismiss the complaint for lack of personal jurisdiction and Sensitech's motion to dismiss the defendants' counterclaims for failure to state a claim. For the reasons that follow, the motion of defendant Alwash will be allowed and plaintiff's motion will be allowed, in part, and denied, in part.

## II. Background

### A. The Facts

Sensitech is a Delaware corporation with its principal place of business in Massachusetts. It manufactures and sells

products and services which monitor the quality, integrity and security of cargo for its customers during the interstate and world-wide transport of those items. Since 2008, Sensitech has worked with LimeStone to distribute its products throughout the United Arab Emirates ("the UAE") and Saudi Arabia. LimeStone is a Dubai-based company that distributes Sensitech's monitors. It is allegedly owned and controlled by Mr. Alwash, an individual who resides in Amsterdam, the Netherlands and who serves as the company's Managing Director.

In or about 2015, Sensitech and LimeStone executed a Distributor Agreement ("the Agreement"), pursuant to which LimeStone bought "Cold Chain" monitors and related products from Sensitech on credit, re-sold them to end-users in the UAE and Saudi Arabia and then reimbursed Sensitech. The Agreement provided, inter alia, that LimeStone would be the exclusive distributor of Sensitech's products within that region, although it reserved to Sensitech the right to sell and service directly its own products there.

To support that arrangement, Sensitech submits that it also disclosed certain confidential information to LimeStone, including customer-specific pricing, product development roadmaps and Professional Services trade secrets, plans and documents. The Agreement authorized LimeStone to utilize that information during the course of the business relationship but

required it to return all such information at the expiration of the contract.

The Agreement initially was set to expire in March, 2016, but, via two amendments, was ultimately extended through December, 2018, after which Sensitech chose not to renew.  By that date, LimeStone apparently owed Sensitech nearly $115,000 for products LimeStone had purchased on credit, a debt which it still has not paid.  It also purportedly failed to return the confidential information of Sensitech which presumably remains in the possession, custody or control of Mr. Alwash and LimeStone.

Sensitech alleges that, in addition to failing to pay its debt and returning Sensitech's confidential information, defendants have also engaged in a variety of other activities designed solely to harm Sensitech's business.  For example, Mr. Alwash allegedly posted on LimeStone's LinkedIn page a secretly recorded dinner conversation with a Sensitech representative during which a variety of Sensitech's confidential information was discussed ("the video recording").  Furthermore, after Sensitech filed this action, Mr. Alwash supposedly published at least three posts to his personal LinkedIn page stating that Sensitech "is a criminal organization."

**B. Procedural History**

Accordingly, in May, 2020, Sensitech sued Limestone and Mr. Alwash in Massachusetts Superior Court, after which defendants removed the action to this Court. In June, 2020, plaintiff filed an amended complaint, alleging against LimeStone breach of contract (Count I)and breach of the covenant of good faith and fair dealing (Count II); and, against both defendants, Conversion (Count III); violation of the Massachusetts Trade Secrets Act, M.G.L. c. 93, § 42A (Count IV); tortious interference (Count V); common law misappropriation (Count VI); violation of M.G.L. 93A ("Chapter 93A") (Count VII) and defamation (Count VIII). It also seeks to enjoin LimeStone from continuing 1) to represent in any forum that LimeStone is an authorized distributor of Sensitech's products, 2) to attempt to sell Sensitech's products to end-users, 3) to disclose Sensitech's confidential information on LinkedIn and 4) to post on any social media platform matters that are clearly false, defamatory or designed to inflict harm on Sensitech.

Also in June, 2020, plaintiff filed a motion for a temporary restraining order and preliminary injunction against defendants which this Court allowed after a hearing. One day prior to the hearing, Alwash submitted a pro se "Declaration of Samer Alwash, in support of Special Appearance to dismiss Complaint for lack of personal jurisdiction" in which he asserts

that the Court lacks personal jurisdiction over him because
1) he is not a citizen of the United States, has never resided
in this country and has never been to Massachusetts, 2) he owns
no property, has no bank account and engages in no business
activities in the Commonwealth and 3) he has not consented to
jurisdiction in this state.  During the hearing, Mr. Alwash
appeared without counsel, presented no rebuttal in opposition to
Sensitech's allegations or to the entering of the preliminary
injunction but instead simply repeated his argument that this
Court lacks personal jurisdiction over him.

Mr. Alwash has, since, retained counsel and the Court has
subsequently modified the preliminary injunction which remains
in effect.  The individual defendant also continues to contest
this Court's exercise of personal jurisdiction over him and a
motion to dismiss for lack of personal jurisdiction, filed by
counsel, remains pending.

Moreover, while purporting to preserve that jurisdictional
challenge, defendants filed an answer to the amended complaint
in January, 2021, in which they assert 12 counterclaims against
Sensitech.  Those counterclaims, in large part, mirror
plaintiff's claims, including breach of contract, tortious
interference, breach of the covenant of good faith and fair
dealing and misappropriation of trade secrets.  Plaintiff has

moved to dismiss those counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

## III. **Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction**

### A. Legal Standard

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction is 1) statutorily authorized and 2) consistent with the Due Process Clauses of the United States Constitution. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015); United States v. Swiss Am. Bank, Ltd, 274 F.3d 610, 618 (1st Cir. 2001).

Where, as here, the Court will decide the motion without first holding an evidentiary hearing, the Court applies the "prima facie" standard of review and takes the plaintiff's

> properly documented evidentiary proffers as true and
> construe[s] them in the light most favorable to
> [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). A plaintiff cannot, however, rely on the "unsupported allegations" in its complaint but "must put forward evidence of specific facts to demonstrate jurisdiction exists." Id. (internal citations omitted); see also Philips v. Prairie Eye Center, 530 F.3d 22, 26 (1st Cir. 2008) (explaining that, in order for a plaintiff to make a prima facie showing of

jurisdiction, it "ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts").

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009). As such, to make a prima facie showing of personal jurisdiction, the plaintiff must demonstrate that the exercise of jurisdiction 1) is permitted by the forum's long-arm statute, and 2) coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution ("Fourteenth Amendment") by showing that each defendant has "minimum contacts" with Massachusetts. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

### 1. Massachusetts Long-Arm Statute

The requirements of the Massachusetts long-arm statute, M.G.L. c. 223A § 3, are substantially similar to (although potentially more restrictive than) those imposed by the Fourteenth Amendment. See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (noting that "[r]ecently, however, we have suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution"). The statute provides that the exercise of personal jurisdiction by a court in

Massachusetts is proper in any action arising from, <u>inter</u> <u>alia</u>, a defendant:

> (a) transacting business in this commonwealth;
> . . .
> (c) causing tortious injury by an act or omission in this commonwealth; or
>
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

M.G.L. c. 223A, § 3.

### 2. Due Process

The Court's jurisdiction may be either "specific" or "general". <u>Swiss Am. Bank</u>, 274 F.3d at 618. Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. <u>Id.</u> General jurisdiction, on the other hand, exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." <u>Id.</u> (quoting <u>United Elec., Radio and Mach. Workers of Am.</u> v. <u>163 Pleasant Street Corp.</u>, 960 F.2d 1080, 1088 (1st Cir. 1992)). Here, because plaintiff presents only argument for specific jurisdiction, this Court will narrow its jurisdictional analysis accordingly.

The "demonstrable nexus" required to establish specific jurisdiction can be created only by the defendant's contacts

with the forum state. <u>Harlow</u> v. <u>Children's Hosp.</u>, 432 F.3d 50,
58 (1st Cir. 2005). In analyzing such contacts, this Court must
consider three factors: relatedness, purposeful availment and
reasonableness. <u>See</u> <u>Astro-Med, Inc.</u> v. <u>Nihon Kohden Am., Inc.</u>,
591 F.3d 1, 9 (1st Cir. 2009). An affirmative finding as to all
three is required before a court can exercise specific
jurisdiction over a defendant. <u>Phillips Exeter Academy</u> v. <u>Howard</u>
<u>Phillips Fund</u>, 196 F.3d 284, 288 (1st Cir. 1999).

**B. Application to the Individual Defendant**

      **1. Consent/Waiver**

As a preliminary matter, Mr. Alwash neither consented nor
waived his objection to personal jurisdiction by filing counter-
claims with this Court. The individual defendant timely raised
his jurisdictional defense, first, with the Massachusetts state
court and later, here. In doing so, he has preserved his
challenge to personal jurisdiction and his counter-claims will
not operate as a waiver of it. <u>See</u> <u>Gen. Contracting & Trading</u>
<u>Co., LLC</u> v. <u>Interpole, Inc.</u>, 940 F.2d 20, 24 (1st Cir. 1991)
(refusing to treat a counter-claim as a waiver of a
jurisdictional objection that was seasonably raised and
consistently pressed (citing <u>Media Duplication Servs., Ltd.</u> v.
<u>HDG Software, Inc.</u>, 928 F.2d 1228, 1233 & n.2 (1st Cir. 1991));
<u>see also</u> <u>Bayou Steel Corp.</u> v. <u>M/V Amsteloorn</u>, 809 F.2d 1147,

1149 & n.4 (5th Cir. 1987) (filing of a counterclaim "does not operate as a waiver of an objection to jurisdiction").

## 2. Activities as a Corporate Officer

The parties do not dispute that LimeStone is subject to jurisdiction in this Court pursuant to the Agreement's forum selection clause.  It is also apparently undisputed that Mr. Alwash has never been physically present in Massachusetts nor does he personally conduct business in the Commonwealth. Plaintiff, nevertheless, contends that the individual defendant has the requisite minimum contacts with the forum state by virtue of his role as the Managing Director, owner and sole decision-maker of LimeStone.  For the following reasons, the Court disagrees.

In general, an individual's status as a corporate officer is insufficient to establish the minimum contacts required to subject him or her to personal jurisdiction in a foreign forum. See M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 279 (D. Mass. 2008) ("[I]t is axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." (internal quotation marks and citation omitted)).  Although Massachusetts courts have rejected the blanket assertion that individuals acting in their official capacity are thereby shielded from suit in their

individual capacity, "more than mere participation" in the affairs of the corporation is required. Id. at 280.

Thus, personal jurisdiction over a corporate officer rests on whether there is "an independent basis for jurisdiction based on an individual's actions", rather than the corporation's contacts with the forum. Grice v. VIM Holdings Group, LLC, 280 F. Supp. 3d 258, 277 (D. Mass. 2017) ("The Court must analyze the jurisdictional issue based on the officer's personal contacts with Massachusetts." (emphasis in original)). That inquiry considers whether the individual was a "primary participant" in the alleged wrongdoing as it relates to the forum. Calder v. Jones, 465 U.S. 783, 790 (1984); M-R Logistics, 537 F. Supp. 2d at 280. A Massachusetts court can, therefore, exercise jurisdiction over a corporate officer when the individual has "derived personal benefit" or acted beyond the scope of his or her employment with respect to his or her contacts with the Commonwealth. M-R Logistics, 537 F. Supp. 2d at 280.

Here, Sensitech has alleged no specific forum-based contacts of Mr. Alwash providing an independent basis for jurisdiction as a result of his personal conduct. For one, "Massachusetts" is mentioned only three times in the amended complaint: 1) in the caption because plaintiff filed the action in Massachusetts, 2) in the "Parties" section because Sensitech

has its principal place of business in the Commonwealth and 3) under Count IV because plaintiff brings a claim under the Massachusetts Trade Secrets Act. Not one of those references to the Commonwealth, however, relates to Mr. Alwash's contacts with it. In fact, Sensitech never alleges that Mr. Alwash either traveled or sent material communications to Massachusetts with respect to the negotiation, signing or performance of any portion of the Distributor Agreement. See Grice, 280 F. Supp. 3d at 279 ("Because [plaintiff] failed to make sufficient factual allegations to show any personal in-forum contacts of the Individual Defendants, this Court could not find personal jurisdiction on the basis of [their] activities as company owners or managers.").

Although the Agreement (which is between Sensitech and LimeStone) contains a forum selection clause designating Massachusetts as the proper forum, plaintiff's argument that Mr. Alwash is personally bound by that provision is unavailing. Even though Mr. Alwash signed the Agreement, he did so only on behalf of LimeStone, acting in his official capacity as a corporate officer. See M-R- Logistics, 537 F. Supp. 2d at 280 (declining to apply a forum selection clause to corporate officers who signed the agreement only in their official capacities).

Furthermore, while a court can also disregard the corporate form for jurisdictional purposes if the individual defendant is the "alter-ego" of the corporation, see id., the argument here that Mr. Alwash and LimeStone are one-and-the-same is underwhelming. Although Mr. Alwash is the Managing Director and owner of LimeStone, there is no evidence that he, for instance, disregarded corporate formalities, siphoned away corporate funds or used the entity as a shell for his own personal benefit or to promote fraud. See Attorney General v. M.C.K., Inc., 736 N.E.2d 373, 381 n. 19 (Mass. 2000) (listing the 12 factors to be considered when determining whether to set aside corporate formalities). Accordingly, Mr. Alwash's position as the Managing Director and owner of LimeStone cannot support this Court's exercise of personal jurisdiction over him.

### 3. Defamation

Plaintiff also contends that this Court has personal jurisdiction over Mr. Alwash based upon the defamatory statements he purportedly posted on his own and LimeStone's LinkedIn pages which relate to Sensitech, a Massachusetts-based corporation. In evaluating that contention, the Court will side-step the statutory inquiry and move directly to the constitutional analysis. Although the bounds of § 3(c) of the Massachusetts long-arm statute have been characterized as being

somewhat "murky", the First Circuit Court of Appeals has stated,

in dicta, that:

> an allegedly tortious act committed outside the borders of
> Massachusetts, purposefully directed at the state and
> intended to cause injury there, could constitute an in-
> forum act within the meaning of section 3(c).

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 205 (1st

Cir. 1994).  As is discussed below, the issue of whether an act

is "purposefully directed at the state and intended to cause

injury there" is precisely the inquiry with respect to the

second prong of the due process analysis.  Accordingly, the

Court may properly focus on the constitutional analysis and

assume that if it is satisfied, so too is the requirement of the

long-arm statute.

### i.   Relatedness

The first prong of the due process inquiry concerns whether

"the claim underlying the litigation . . . directly arise[s] out

of, or relate[s] to, the defendant's forum-state activities."

Astro-Med, Inc., 591 F.3d at 9 (internal quotation marks

omitted).  Although that inquiry is a "flexible, relaxed

standard," id. (internal citations omitted), it cautions that

the exercise of personal jurisdiction is improper if the

"defendant's forum-state contacts seems attenuated and

indirect." Harlow, 432 F.3d at 61.

In this case, Sensitech alleges that Mr. Alwash has several Massachusetts contacts which relate to its defamation claim, namely, that he posted on his and LimeStone's LinkedIn pages defamatory statements about a Massachusetts company which were circulated and accessible to residents in the Commonwealth. Thus, the injury to Sensitech was apparently suffered in Massachusetts. Those forum-state activities are sufficiently related to Sensitech's defamation claim to satisfy the first prong of the due process appraisal. See Neelon, 2016 WL 3390686, at *3 (finding the relatedness prong satisfied where "Defendants published the press release broadly, including in Massachusetts . . . [and] Plaintiff was injured in Massachusetts by the publication in Massachusetts").

### ii. Purposeful Availment

Sensitech's personal jurisdiction claim falters, however, at prong two of the constitutional analysis which requires "purposeful availment by defendants of the privilege of conducting business in [Massachusetts]," making any contacts with it foreseeable and voluntary. Sawtelle v. Farrell, 70 F.3d 1381, 1389, 1393 (1st Cir. 1995); Astro-Med, Inc., 591 F.3d at 10. Purposeful availment is required to ensure that specific jurisdiction is premised on more than "random, isolated, or fortuitous" contacts by defendant with the forum state or "the unilateral activity of another party or third party." See Burger

King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted).

In Hugel v. McNell, 886 F.2d 1 (1st Cir. 1989), the First Circuit Court of Appeals considered the application of the second factor in a defamation case.  The Court analyzed the Supreme Court's "stream of commerce" jurisprudence and noted that placing a product into commerce, without more, does not establish personal jurisdiction in places where that product ends up. Id. at 4.  Similarly, in defamation cases a rule emerged:

> defamatory "effect" [within a forum] by itself is not
> sufficient to confer jurisdiction over a foreign defendant.
> Rather, to make a prima facie showing, the victim of the
> defamatory statement must demonstrate that its author
> intended the libel to be felt in the forum state.

Noonan v. Winston Co., 902 F. Supp. 298, 305 (1st Cir. 1995) ("Noonan I") (emphasis in original) (summarizing Hugel).

In this case, there is nothing to suggest that any act by Mr. Alwash was "committed with sufficient purpose to satisfy the intent requirement" of the purposeful availment prong. Noonan v. Winston, Co., 135 F. Supp. 85, 90 (1st Cir. 1998) ("Noonan II"). Although Mr. Alwash supposedly posted defamatory statements about a Massachusetts-based company on his and LimeStone's LinkedIn pages, that, without more, cannot show that he targeted

Massachusetts rendering his contacts with the Commonwealth voluntary and foreseeable.

Sensitech has proffered no factual allegation indicating that Mr. Alwash knew any of his posts would be viewed in Massachusetts by Massachusetts residents, let alone that he intended for them to be viewed here. Thus, it cannot be inferred that Mr. Alwash intended harm to be felt by Sensitech, a company with offices throughout the world, in the Commonwealth. Cf. Calder v. Jones, 465 U.S. 783, 789–90 (1995) (finding personal jurisdiction because the defendants' "intentional and allegedly tortious actions were expressly aimed at [the forum state]"). For those reasons, this Court declines to exercise personal jurisdiction over Mr. Alwash.

## IV. Plaintiff's Motion to Dismiss the Counterclaims for Failure to State a Claim

### A. Legal Standard

District courts apply the same legal standard to motions to dismiss counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) as they do when reviewing motions to dismiss a complaint. See, e.g., Alongi v. Moores Crane Rental Corp., No. 12-cv-10055, 2012 WL 6589702, at *2 (D. Mass. Dec. 17, 2012). To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)).  A counter-claim is facially
plausible if, after accepting as true all non-conclusory factual
allegations, the court can draw the reasonable inference that
the counter-defendant is liable for the misconduct alleged.
Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.
2011).

When rendering that determination, a court may not look
beyond the facts alleged in the counterclaims, documents
incorporated by reference therein and facts susceptible to
judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st
Cir. 2011).  A court also may not disregard properly pled
factual allegations even if actual proof of those facts is
improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the
relevant inquiry focuses on the reasonableness of the inference
of liability that the moving party is asking the court to draw.
Id. at 13.

**B. Application**

### 1. Breaches of Contract and Implied Warranty of Good Faith and Fair Dealing (Counts I & II)

Under Massachusetts law, to prove a breach of contract, a
counter-claimant must demonstrate that:

> [1] there was an agreement between the parties; [2] the
> agreement was supported by consideration; [3] the [counter-
> claimant] was ready, willing, and able to perform his or
> her part of the contract; [4] the [counter-]defendant

committed a breach of the contract; and [5] the [counter-claimant] suffered harm as a result.

Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016).

Furthermore, in Massachusetts, "a covenant of good faith and fair dealing is implied in every contract." Shaulis v. Nordstrom, Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (citing Uno Rests., 805 N.E.2d at 964). The covenant provides that the parties will

deal honestly and in good faith in both the performance and enforcement of the terms of their contract.

Id. (quoting Hawthorne's, Inc. v. Warrenton Realty, Inc., 606 N.E.2d 908, 914 (Mass. 1993)). It is breached "when one party violates the reasonable expectations of the other." A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth., 95 N.E.3d 547, 560 (Mass. 2018).

It is undisputed that the Distributor Agreement forms a binding agreement between the parties which is governed by Massachusetts law. Defendants maintain that Sensitech breached that Agreement and its implied covenant of good faith and fair dealing by selling to LimeStone recycled and unsuitable products for distribution, engaging a third-party distributor to compete with LimeStone and terminating the contract in retaliation for LimeStone raising concerns about the quality of Sensitech's product and services.

Accepting those factual allegations as true, this Court concludes that defendants have stated a claim for breach of contract and the attendant implied covenant of good faith and fair dealing. The counter-claims permit the reasonable inference that Sensitech breached, for instance, the provision in the Distributor Agreement naming LimeStone as the exclusive distributor of Sensitech's products in the UAE and Saudi Arabia. Specifically, LimeStone alleges plausibly that Sensitech engaged a third-party distributor in the UAE in 2018, i.e. Tardigrad, "in direct competition with LimeStone". Such conduct, if proven, contravenes the Agreement's exclusivity provision and thus constitutes a breach of contract. For that reason, the Court declines to dismiss Counts I and II of the counter-claims.

### 2. Tortious Interference (Counts III–V)

A claim for tortious interference with a contract or business relationship under Massachusetts law requires the counter-claimant to prove that

> 1) he had a contract [or business relationship] with a third party, 2) the [counter-]defendant knowingly induced the third party to break that contract [or business relationship], 3) th[at] interference, in addition to being intentional, was improper in motive or means and 4) the [counter-claimant] was harmed by the [counter-]defendant's actions.

Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 536 (Mass. 2011); see also Hamann v. Carpenter, 937 F.3d 86, 93 (1st Cir. 2019). A party cannot "tortiously interfere" with a contract or business

relationship to which he is a party. Psy-Ed Corp., 947 N.E.2d at
537.

In order to establish a claim for tortious interference
with a prospective economic advantage, on the other hand, a
counter-claimant must show that 1) it had a business
relationship or contemplated "contract of economic benefit"
which 2) the offending party was aware of and, nonetheless,
3) intentionally and maliciously interfered with, 4) thereby
causing harm to the counterclaimant via "loss of that
advantage". Fisher v. Stigliz, 302 F. Supp. 3d 457, 460 (D.
Mass. 2018).

Defendants contend that Sensitech tortiously interfered
generally with their contracts, business relationships and
prospective economic advantages by supplying LimeStone with
recycled and unsuitable equipment for distribution to the
network of downstream customers that LimeStone had developed.
Those allegations fall short of stating a plausible claim for
tortious interference, however, because they fail to identify
any specific contract, relationship or opportunity that was lost
as a result of Sensitech's conduct.  Nor do they suggest that
any specific downstream customer disapproved of Sensitech's
product or that Sensitech was aware of any such disapproval. See
Fisher, 302 F. Supp. 3d at 460 ("Plaintiff does not allege
whether the Defendants were aware of his customers, nor does he

specify the opportunity that was lost, whether the Defendants were aware of specific opportunity, or that they employed improper means to interfere with that opportunity.").

Moreover, even if Sensitech did interfere with any current or prospective contract, business relationship or economic advantage of LimeStone, none of the facts alleged in the counter-claims indicates that, in doing so, Sensitech acted with the requisite malice or intent. Thus, defendants' counter-claims for tortious interference (Counts III–V) will be dismissed.

### 3. Violation of M.G.L. c. 93A (Count VI)

Chapter 93A proscribes those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices" and authorizes businesses to sue one another for engaging in such practices. M.G.L. c. 93A, §§ 2, 11. When determining whether an act or practice is unfair under that Chapter, a court assesses

> (1) whether the practice . . . is within at least the
> penumbra of some common-law, statutory, or other
> established concept of unfairness; (2) whether it is
> immoral, unethical, oppressive, or unscrupulous; [and]
> (3) whether it causes substantial injury to consumers
> (or competitors or other business [people]).

City of Beverly v. Bass River Golf Mgmt., Inc., 93 N.E.3d 852, 863 (Mass. App. Ct. 2018) (alterations in original) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915 (Mass.

1975)); see also Skehel v. DePaulis, No. 13-cv-11202, 2017 WL
2380164, at *3 (D. Mass. June 1, 2017) ("To be actionable, the
challenged misconduct must rise to the level of an extreme or
egregious business wrong, commercial extortion, or similar level
of rascality that raises an eyebrow of someone inured to the
rough and tumble of the world of commerce." (internal quotation
marks omitted)); Madan v. Royal Indem. Co., 532 N.E.2d 1214,
1217–18 (Mass. App. Ct. 1989); Levings v. Forbes & Wallace,
Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979) (Kass, J.).

Defendants assert that Sensitech engaged in unfair or
deceptive practices by 1) advertising new, properly tested
monitors but instead selling LimeStone recycled, unsuitable
equipment, 2) engaging a third-party distributor to compete with
LimeStone, 3) retaliating against LimeStone for complaining
about the quality of the products by blocking LimeStone's orders
for equipment and wrongfully terminating the Agreement and,
thereafter, 4) misappropriating the network LimeStone developed
in the Middle East and selling directly to those customers.

Typically, a mere breach of contract, without more, does
not amount to a Chapter 93A violation but a knowing violation of
a contractual obligation for the purpose of securing an
unwarranted benefit can. See Diamond Crystal Brands, Inc. v.
Backleaf, LLC, 803 N.E.2d 744 (Mass. 2004). Such a violation is
precisely what LimeStone's, albeit sparse, factual allegations

state here, namely, that Sensitech blocked LimeStone's orders for equipment and wrongfully terminated the Distributor Agreement while simultaneously continuing to sell products to LimeStone's customer network.  Those facts state a colorable claim for a Chapter 93A violation and the Court will, therefore, deny Sensitech's motion to dismiss Count VI of the counter-claims.

### 4. Violation of the Sherman Antitrust Act (Count VII)

Plaintiff moves to dismiss LimeStone's Sherman Antitrust Act ("the Act") counter-claim based upon Section 6a of the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA") which provides that Sections 1 through 7 of the Act:

> shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
>
>> (1) such conduct has a direct, substantial, and reasonably foreseeable effect—
>>
>>> (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>>>
>>> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>>
>> (2) such effect gives rise to a claim under the provisions of 1 to 7 of this title, other than this section.

The United States Supreme Court has clarified that the FTAIA removes from the Act's reach:

> (1) export activities and (2) other commercial activities taking place abroad, unless those activities adversely

affect domestic commerce, imports to the United States, or
exporting activities of one engaged in such activities
within the United States.

F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 161
(2004).

The Court agrees with plaintiff that defendants' counter-
claim under the Sherman Antitrust Act is barred by the FTAIA.
Nothing in defendants' answer or counter-claims allege plausibly
that the conduct of Sensitech has had an adverse impact on
domestic trade or commerce.  In fact, the injuries alleged by
defendants are only to LimeStone, a corporation incorporated in
Dubai with its principal place of business there and which has a
network of customers in the Middle East. See F. Hoffmann-La
Roche, 542 U.S. at 165 ("Congress sought to release domestic
(and foreign) anticompetitive conduct from Sherman Act
constraints when that conduct causes foreign harm." (emphasis in
original)).  Although defendants allege that some of their
downstream customers were subcontractors to the United States
Army, that is neither a substantial nor direct enough contact to
fall within an exception set forth in the FTAIA.

### 5. Misappropriation of Trade Secrets (Counts VIII–X)

A counter-claimant can establish misappropriation of trade
secrets under M.G.L. c. 93, § 42 by proving that the offending
party acquired the trade secret through improper means
(including by theft, bribery, misrepresentation or breach of

contract but not by reverse engineering) or by disclosing or using the trade secret of another obtained through improper means without that person's consent. M.G.L. c. 93, § 42.  A counterclaimant may also bring a claim under the Defend Trade Secrets Act ("DTSA") if it is related to a product or service used in or intended to be used in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).  The standard for misappropriation under the DTSA is substantially similar to that under Massachusetts law. Compare 18 U.S.C. § 1839(5)-(6) with M.G.L. c. 93, § 42(1)-(2).

To prevail on a claim of misappropriation of trade secrets under Massachusetts law, a counter-claimant must establish that 1) the information at issue constitutes a trade secret, 2) the counter-claimant took reasonable measures to secure the confidentiality of the information and 3) the counter-defendant obtained the trade secret through improper means. Optos, Inc. v. Topcon Medical Systems, Inc., 777 F. Supp. 2d 217, 238 (D. Mass. 2011); see also M.G.L. c. 93, § 42(4) (defining "trade secret"). A trade secret is any confidential information used in a business that "gives [the owner] an advantage over competitors who do not know or use it". Optos, Inc., 777 F. Supp. 2d at 238 (quoting J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 260 N.E.2d 723, 729 (Mass. 1970)).  Matters of public knowledge or information generally known in an industry cannot be a trade

secret. J.T. Healy, 260 N.E.2d at 729.

Nowhere in defendants' counter-claims do they allege any specific trade secret that Sensitech purportedly obtained, nor do they describe the measures LimeStone took to protect the secrecy of that information or the improper means Sensitech supposedly used to obtain it. Instead, LimeStone merely states that,

> Sensitech has stolen unlawfully [sic] taken away, concealed and/or copied LimeStone's Confidential Information with the intent to convert such Confidential Information for its own use.

Such conclusory allegations fail to state a claim for relief. For that reason, Counts VIII, IX and X of defendants' counter-claims will be dismissed.

### 6. False Designation of Origin (Count XI)

Section 43(a)(1)(B) of the Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, [or] qualities" of a product. 15 U.S.C. § 1125(a)(1)(B). To prevail on a claim brought under that provision, a counter-claimant must show that

> (1) the [counter-]defendant made a false or misleading description of fact in a commercial advertisement about [its] own or another's product; (2) the misrepresentation is material . . . ; (3) [it] actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the [counter-]defendant placed the false or misleading statement in interstate commerce; and (5) the [counter-claimant] has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its

products.

Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d
302, 310-11 (1st Cir. 2002) cert. denied, 537 U.S. 1001 (2002).

Under this Count, defendants assert that Sensitech marketed
its products in a misleading manner by advertising their
equipment as new and properly-tested but apparently selling to
LimeStone equipment that was recycled and defective. Defendants
contend that, as a result, LimeStone unknowingly overcharged its
downstream customers for recycled equipment and that ultimately
damaged its business and reputation. Those allegations, taken
as true, plausibly state a claim under the Lanham Act for false
advertising. See Lexmark Intern., Inc. v. Static Control
Components, Inc., 572 U.S. 118, 133 (2014) (holding that a
plaintiff suing under § 1125(a) must show economic or
reputational injury which can occur "when deception of consumers
causes them to withhold trade from the plaintiff"). Sensitech's
motion to dismiss Count XI will, therefore, be denied.

### 7. Malicious Abuse of Process (Count XII)

In order to succeed on a claim for abuse of process under
Massachusetts law, a moving party must prove that 1) a process
was used 2) for an ulterior or illegitimate purpose 3) resulting
in damage. Psy-Ed Corp., 947 N.E.2d at 535. Such process
"refers to the papers issued by a court to bring a party or
property within its jurisdiction". Powers v. Leno, 509 N.E.2d

46, 48 (Mass. App. Ct. 1987).

To establish ulterior purpose, a counterclaimant must show that the offending party had

> more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit.

Children's Hospital Corp. v. Cakir, 183 F. Supp. 3d 242, 249 (D. Mass. 2016) (internal quotation omitted).

Here, defendants have identified no factual allegations to indicate that plaintiff brought this lawsuit for an ulterior purpose. Defendants maintain that the purpose for which Sensitech brought this action was to silence LimeStone and prevent it from disseminating information about Sensitech's purportedly fraudulent behavior. That purpose, however, is not ulterior but rather one of the express reasons Sensitech sued LimeStone, i.e. to restrain LimeStone from making statements about Sensitech that are false, defamatory or otherwise designed to harm its business. See Children's Hospital, 183 F. Supp. 3d at 250 (requiring the use of process as a threat to coerce "a collateral advantage not properly involved in the proceeding."). Because defendants have not alleged plausibly that, in bringing this action, Sensitech "aim[ed] to further a purpose other than winning the lawsuit", id. (internal citation omitted), it has failed to state a claim for malicious abuse of process.

**ORDER**

For the foregoing reasons, the motion of defendant Samer Alwash to dismiss the complaint against him for lack of personal jurisdiction (Docket No. 66) is **ALLOWED** and the motion of plaintiff Sensitech Inc. to dismiss defendants' counter-claims for failure to state a claim (Docket No. 76) is, with respect to defendants' counter-claims for

- Tortious Interference (Counts III-V);

- Violation of the Sherman Antitrust Act (Count VII);

- Misappropriation of Trade Secrets (Counts VIII-X); and

- Malicious Abuse of Process (Count XII),

**ALLOWED**, but is otherwise **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 9, 2021