United States District Court
District of Massachusetts

```
_____
                              )
Sensitech, Inc.,              )
                              )
      Plaintiff,              )
                              )
      v.                      )
                              )   Civil Action No.
LimeStone FZE,                )   20-11043-NMG
                              )
      Defendant.              )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises from the alleged breach by LimeStone FZE ("LimeStone" or "defendant") of a distribution contract between it and plaintiff Sensitech, Inc. ("Sensitech" or "plaintiff").

Pending before the Court are 1) plaintiff's motion for the Court to reconsider its dismissal of claims against erstwhile defendant Samer Alwash ("Alwash" and together with LimeStone "defendants"), the managing director of LimeStone (Docket No. 91) and 2) defendant's motion to file an amended answer and counterclaims (Docket No. 93). Also pending are Sensitech's motion for legal fees (Docket No. 96) and LimeStone's motion for leave to file a reply (Docket No. 97).

For the reasons set forth below, LimeStone's motion to amend its answer and counterclaims will be allowed, in part, and denied, in part. The other pending motions will be denied.

-1-

I.  **Background**

The Court has previously set forth the factual and procedural background of this action at length. See Docket No. 84 at 1-6.  For purposes of the present motions, the relevant facts are as follows.

Sensitech is a Delaware corporation with its principal place of business in Massachusetts.  It manufactures and sells products and services which monitor the quality, integrity and security of cargo in transit.  LimeStone is a company based in Dubai and was the distributor of LimeStone's products throughout the United Arab Emirates ("the UAE") and Saudi Arabia from 2015 to 2018.  As detailed in the Court's prior memorandum and order, the parties' business relationship deteriorated and, in June, 2020, Sensitech commenced the present litigation against LimeStone and Alwash in the Massachusetts Superior Court for Essex County for damages and injunctive relief. See id.

Defendants timely removed the case to this Court. Thereafter, Alwash moved to dismiss the claims against him for lack of personal jurisdiction.  LimeStone answered the complaint and, joined by Alwash (who maintained his jurisdictional objection), asserted 12 counterclaims against Sensitech. Sensitech moved to dismiss those counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).  In July, 2021, the Court dismissed the

claims against Alwash in his individual capacity for lack of personal jurisdiction, and most of LimeStone's counterclaims.

Sensitech now moves for reconsideration of the dismissal of the claims against Alwash or, in the alternative, for leave to take jurisdictional discovery. LimeStone moves for leave to file an amended answer in order to provide additional factual support for some of the dismissed counterclaims.

## II. Sensitech's Motion for Reconsideration

Sensitech has moved for the Court to reconsider the dismissal of its claims against Alwash or, in the alternative, to allow it to take jurisdictional discovery. It contends that because Alwash is the managing director, owner and sole decision-maker for LimeStone he is, "as a practical matter", LimeStone and therefore is bound individually by the forum selection clause in the distribution agreement. For the reasons stated in its prior memorandum and order dismissing Sensitech's claims against Alwash, the Court does not possess personal jurisdiction over Alwash and declines to reconsider its ruling.

For substantially the same reasons, the Court will not permit Sensitech to take jurisdictional discovery. The Court possesses broad discretion to permit jurisdictional discovery, see Me. Med. Ctr. v. United States, 675 F.3d 110, 118-19 (1st Cir. 2012), and a plaintiff may be entitled to such discovery where it has made a "colorable claim" of jurisdiction and has

-3-

been "diligent in preserving [its] rights", see United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625-27 (1st Cir. 2001). Diligence requires, inter alia, that the plaintiff "present facts to the court which show why jurisdiction would be found if discovery were permitted". Id. at 626. Sensitech has made no such presentation nor is there a colorable claim that the Court possesses jurisdiction with respect to Alwash. Accordingly, its request for jurisdictional discovery will be denied.

### III.   LimeStone's Motion for Leave to File Amended Answer and Counterclaims

LimeStone has moved for leave to amend its complaint to allege additional facts in support of five counterclaims dismissed by the Court. Those counterclaims are: Count III (tortious interference with contractual relations), Count IV (tortious interference with business relations), Count VIII (violation of the Massachusetts trade secrets act, M.G.L. c. 93, § 42A), Count IX (common law misappropriation) and Count X (violation of the Defend Trade Secrets Act ("the DTSA"), 18 U.S.C. § 1836).[1]

Sensitech opposes the motion on the grounds that no relief can issue on the amended counterclaims which are therefore

---

[1] LimeStone does not seek to amend Counts V, VII and XII, dismissed in the same memorandum and order ("M&O"), thereby altering the numbering of its counterclaims in its proposed amended complaint. To avoid confusion, the counterclaims are

-4-

futile. It also asserts the motions should be denied because LimeStone failed to meet and confer with Sensitech in a good faith effort to narrow or resolve the issues raised by the motion before filing as required by Rule 7.1 of the local rules of the district court.

### A. Legal Standard

A party may amend his pleading by leave of the court, which should be "freely give[n] . . . when justice so requires". Fed. R. Civ. P. 15(a)(1), Holbrook v. Boston Scientific Corp., No. 20-10671, 2020 WL 5540544, at *1 (D. Mass. Sept. 16, 2020). Rule 15(a) gives courts wide discretion in deciding whether to allow or deny leave to amend. U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009). A court acts within that discretion if it denies leave for reasons of, inter alia, undue delay in filing the motion, repeated failure to cure deficiencies, undue prejudice to the opposing party or futility of amendment. Id.

A proposed amendment is futile if it "does not plead enough to make out a plausible claim for relief". HSBC Reality Credit Corp. v. O'Neill, 745 F.3d 564, 578 (1st Cir. 2014). Futility thus applies "the same standard of legal sufficiency as applies

---

referred to herein as they were numbered in the original complaint.

to a Rule 12(b)(6) motion." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). To survive such a motion, a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the opposing party is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Id. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the movant is asking the court to draw. Id. at 13. When rendering that determination, a court may not look beyond the facts alleged in the counterclaim, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

### B. Application

The counterclaims which LimeStone seeks to amend fall into two categories: 1) those which concern alleged tortious interference with contractual and business relations and 2)

those which concern alleged misappropriation of trade secrets in violation of federal, state and common law proscriptions. The Court considers them seriatim.

### i. The tortious interference claims

The proposed amended counter-complaint alleges that Sensitech tortiously interfered with LimeStone's contractual and business relations. It alleges that, in 2018, Sensitech blocked LimeStone's alleges and ceased communication in retaliation for concerns that LimeStone had raised about the quality of certain Sensitech monitors which prevented LimeStone from fulfilling orders from its customers. It further alleges that Sensitech employed other distributors to fill those orders, in violation of its exclusive distributorship and, in addition, began selling to some of those customers directly.

As recited by the Court in its prior M&O, a counterclaim for tortious interference with a contract or business relationship under Massachusetts law requires the counter-claimant to prove that

> 1) he had a contract [or business relationship] with a third party, 2) the [counter-]defendant knowingly induced the third party to break that contract [or business relationship], 3) th[at] interference, in addition to being intentional, was improper in motive or means and 4) the [counter-claimant] was harmed by the [counter-]defendant's actions.

Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 536 (Mass. 2011), see also Hamann v. Carpenter, 937 F.3d 86, 93 (1st Cir. 2019). A

party cannot "tortiously interfere" with a contract or business relationship to which he is a party. Psy-Ed Corp., 947 N.E.2d at 537.

The proposed amended complaint fails to state a claim of tortious interference with contractual relations. Although LimeStone alleges that Sensitech caused it to lose customers (in fact, its entire customer base), LimeStone does not assert that any of them breached their contract, let alone that Sensitech induced them to do so. See id. at 536 (reciting elements of tortious interference with contractual relations). Because the amended counterclaim fails to allege facts sufficient to support a claim of tortious interference with contractual relations (Count III), it is futile. See Lemelson v. United States Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013) (providing for dismissal where the complaint does not set forth factual allegations with respect to "each material element necessary to sustain recovery").

LimeStone's failure to allege that Sensitech induced any LimeStone customer to breach its contract is, however, no obstacle to its counterclaim for tortious interference with business relations. Unlike its contractual counterpart, the tort of interference with business relations requires a counter-claimant to show that it had an "advantageous business relationship with a third party", Karmaloop, Inc. v. Sneider,

-8-

2013 WL 5612721 at *9 (Mass. Super. Ct. Apr. 25, 2013) (collecting cases), and that the defendant caused the third party "not to enter into or continue [that] business relationship", Buster v. George W. Moore, Inc., 783 N.E.2d 399, 414 (Mass. 2003), see also Owen v. Williams, 77 N.E.2d 318, 320-21 (Mass. 1948). An advantageous business relationship is an existing business relationship or contemplated business relationship with probable economic benefit. Id. (citing Comey v. Hill, 438 N.E.2d 811, 816 (Mass. 1982)), see American Private Line Services, Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992).

    Here, LimeStone has alleged facts showing that 1) it had business relationships, i.e. contracts to sell Sensitech products, with the customers listed in the proposed amended counterclaim, among others, 2) by disrupting LimeStone's business operations and selling to its clients, Sensitech knowingly induced those customers to suspend their business relationship with LimeStone, 3) Sensitech's motives were retaliatory and improper and 4) Limestone suffered harm, i.e. the loss of its entire customer base.

    Sensitech counters that LimeStone's allegations are merely consistent with liability rather than suggestive of it, citing Ashcroft v. Iqbal, 556 U.S. 662 (2009), and insufficient to maintain a counterclaim for tortious interference. That

argument is unavailing. For pleading purposes, "circumstantial evidence often suffices to clarify a protean issue such as an actor's motive or intent". Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 56 (1st Cir. 2013). Here, accepting LimeStone's allegations as true and affording it all reasonable inferences, it has plausibly alleged that Sensitech acted with an improper, retaliatory motive. See Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 88 (1st Cir. 2015).

Because LimeStone's proposed amended counterclaim is not futile with respect to Count IV, its motion to amend that count will be allowed.

### ii. The trade secrets counterclaims

LimeStone alleges violations of the Massachusetts and federal trade secrets acts (Counts VIII and X, respectively) as well as common law misappropriation (Count IX). As recited by the Court in its prior M&O, a counter-claimant can establish misappropriation of trade secrets under M.G.L. c. 93, § 42 by showing that the offending party acquired the trade secret through improper means (including by theft, bribery, misrepresentation or breach of contract but not by reverse engineering) or by disclosing or using the trade secret of another obtained through improper means without that person's consent. M.G.L. c. 93, § 42. A counterclaimant may also bring a claim under the Defend Trade Secrets Act ("DTSA") if it is

related to a product or service used in or intended to be used in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). The standard for misappropriation under the DTSA is substantially similar to that under Massachusetts law. Compare 18 U.S.C. § 1839(5)-(6) with M.G.L. c. 93, § 42(1)-(2).

To prevail on a claim of misappropriation of trade secrets under Massachusetts law, a counter-claimant must establish that 1) the information at issue constitutes a trade secret, 2) the counter-claimant took reasonable measures to secure the confidentiality of the information and 3) the counter-defendant obtained the trade secret through improper means. Optos, Inc. v. Topcon Medical Systems, Inc., 777 F. Supp. 2d 217, 238 (D. Mass. 2011), see also M.G.L. c. 93, § 42(4) (defining "trade secret"). A trade secret is any confidential information used in a business that "gives [the owner] an advantage over competitors who do not know or use it". Optos, Inc., 777 F. Supp. 2d at 238 (quoting J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 260 N.E.2d 723, 729 (Mass. 1970)). Matters of public knowledge or information generally known in an industry cannot be a trade secret. J.T. Healy, 260 N.E.2d at 729.

In the proposed amended counterclaim, LimeStone alleges that lists of its customers, together with their orders and requirements, were trade secrets. It claims that it took reasonable measures to safeguard such information by preventing

-11-

access to it by third parties, except for limited disclosure made to Sensitech for business purposes.  LimeStone further alleges that Sensitech used that information to sell to its customers directly, harming LimeStone's business.

While customer information such as names, orders and requirements may constitute trade secrets, see Allstate Ins. Co. v. Fougere, No. 16-11652, 2019 U.S. Dist. LEXIS 168577, at *54-55 (D. Mass. Sept. 30, 2019) (collecting cases), LimeStone's proposed amended counterclaim fails to allege facts sufficient to state a claim under the DTSA or state statutory or common law.  Specifically, LimeStone's allegations that it took reasonable measures to safeguard its information are conclusory and inadequate. See Iqbal, 556 U.S. at 679 (explaining that a court need not accept as true "threadbare recitals of a cause of action's elements").

LimeStone states that it

> took reasonable measures to safeguard its Confidential Information by preventing third parties from accessing [it]

but fails to elaborate upon what those measures were.  The proposed amended counterclaim does not, for instance, allege any facts about how the confidential information was stored, whether those individuals and entities to whom it was disclosed (including Sensitech) were subject to confidentiality agreements and what portion, if any, of the information was publicly known.

As a result, it is futile with respect to the trade secrets counterclaims and, to that extent, LimeStone's motion for leave to file an amended counterclaim will be denied.

**C.    Local Rule 7.1**

Finally, Sensitech contends that LimeStone's motion for leave to file should be denied because it failed to meet and confer with Sensitech before filing the pleading in violation of Local Rule 7.1.

That local rule provides that

> [n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue.

L.R., D. Mass. 7.1(a)(2).  It is designed to ensure that parties present issues to the Court only after they have determined that judicial intervention is necessary. See Converse, Inc. v. Reebok Intern. Ltd., 328 F. Supp. 2d 166, 170-71 (D. Mass. 2004).

Here, prior to filing the pending motion, counsel for LimeStone contacted counsel for Sensitech by phone and email and included with the latter communication a draft of its pleading. When counsel for Sensitech indicated that he could not review the proposed pleading within the brief timeframe requested, counsel for LimeStone, apparently considering its obligations under L.R. 7.1 discharged, filed the pending motion.

A district court has "great leeway in the application and enforcement of its local rules." United States v. Roberts, 978

-13-

F.2d 17, 20 (1st Cir. 1992), see also Padmanabhan v. Healey, 159 F. Supp. 3d 220, 226 (D. Mass. 2016).  Here, LimeStone's efforts to meet and confer, although perhaps meager, do not warrant summary denial of its motion to amend.  See Blanchard v. Swaine, No. 08-40073, 2010 U.S. Dist. LEXIS 125397 at *15-16 (D. Mass. Nov. 29, 2010).  Moreover, it does not appear that a conference pursuant to the rule "would have changed the parties' fundamental positions." Sun Capital Partners III, LP v. New Eng. Teamsters & Trucking Industry Pension Fund, 329 F.R.D. 102, 105 (D. Mass. 2018).

**ORDER**

For the foregoing reasons,

1) plaintiff's motion for reconsideration (Docket No. 91) is **DENIED**;

2) defendant's motion for leave to file an amended answer and counterclaims (Docket No. 93) is, with respect to Count IV (tortious interference with business relations), **ALLOWED,** but is otherwise **DENIED**;

3) defendant's motion for leave to file reply (Docket No. 97) is **DENIED as moot;** and

4) plaintiff's request for legal fees (Docket No. 96) is **DENIED.**

**So ordered.**

          /s/ Nathaniel M. Gorton
          Nathaniel M. Gorton
          United States District Judge

Dated January 26, 2022